IRMA RIVERA VÁZQUEZ, Individually and as Mother with Patria Potestas, ETC., Petitioners, *v.* DISTRICT COURT FOR THE JUDICIAL DISTRICT OF BAYAMÓN, HON. F. GALLARDO DÍAZ, JUDGE, Respondent; ENGRACIA SANTOS, Intervener.

No. 1838. Argued November 6, 1950.—Decided December 8, 1950.

*L. Santiago Cardona* for petitioners. *José C. Jusino* for intervener.

MR. JUSTICE SNYDER delivered the opinion of the Court.

We granted certiorari to review certain orders of the district court in a judicial administration proceeding. A detailed statement of the background of the case is necessary in order to determine if these orders were properly entered.

Eugenio Sánchez Santos had two acknowledged natural children with Irma Rivera. When he died in 1947, his legitimate mother, Engracia Santos, filed a petition in the district court for judicial administration of his estate. Pursuant to this petition, the lower court appointed a temporary administrator. In a previous proceeding, we granted the petition for certiorari, filed by Irma Rivera representing her two children, to review the order appointing the administrator. On January 19, 1949 we held that if Sánchez had died intestate, his mother had an interest in his estate and was therefore entitled to apply for administration thereof. However, we found the allegations and verification of her petition defective. We therefore vacated the order appointing the temporary administrator, with directions to grant a reasonable time to Mrs. Santos to amend her petition in accordance with our opinion. We also directed the lower court to take the necessary measures to safeguard the estate in the interim. *Sánchez* v. *District Court*, 69 P.R.R. 457.

On February 4, 1949 the mother of the decedent filed an amended petition for judicial administration in which she corrected the defects in her first petition. She also requested that the lower court leave the property in status quo until appointment of the administrator under the amended petition. The lower court on February 4, 1949 entered an order for a hearing on the amended petition on February 11, 1949 and decreed "the 'status quo' of this case" until it passed thereon.

A year prior to these events, on February 2, 1948, Mrs. Santos, the mother of the decedent, filed a motion for appointment of a guardian *ad litem* for the children on the ground that their interests are adverse to those of Irma Rivera, who is claiming that half of the alleged estate of the decedent

belongs to her. No action was taken on this motion until after our decision in 69 P.R.R. 457. Thereafter, on February 17, 1949, Mrs. Santos amended her motion for appointment of a guardian *ad litem* for the children. A hearing was held on this motion on February 18, 1949 before Judge Willis Ramos, who was serving in the lower court in the absence of Judge Gallardo, the regular judge. On February 21, 1949 Judge Ramos appointed Mrs. Santos, the paternal grandmother, as guardian *ad litem*. His order recites that both parties concede the necessity of appointing a guardian *ad litem* for the minors involved.

On February 18, 1949 Irma Rivera, who had been in possession of the estate prior to appointment of the administrator, filed a motion praying for surrender of the estate to her by the administrator, whose appointment we vacated in our decision in 69 P.R.R. 457. On February 28, 1949 Judge Ramos entered an order reciting that, pursuant to our mandate to take the necessary means to safeguard the estate, (1) the Marshal shall make an inventory and take possession of the estate; (2) the Marshal shall deliver the properties to Irma Rivera, pursuant to inventory, after the latter posts a $6,000 bond; (3) the original administrator shall file an accounting.

On March 16, 1949 Irma Rivera, representing her children, renewed a motion for disqualification [1] of the cause on the ground that she could not obtain a fair trial from Judge Gallardo. The grounds for disqualification which the moving party recites in this motion are confined to the action taken prior thereto by Judge Gallardo in this case. On March 17, 1949 Judge Gallardo entered an order providing for notification of the motion to the Attorney General in order that another district judge might be sent to the lower court to hear

---

[1] The petitioner had desisted from her motion filed earlier because her attorney was under the impression that Judge Gallardo was being appointed to a different judicial post. When this did not happen her attorney renewed the motion. Although the petitioner at times calls this a motion for removal, it was in substance a motion for disqualification and was so treated by all the parties.

and decide it. After various delays not necessary to detail here, a hearing on the motion was finally held on September 26, 1949 before Judge Umpierre. Prior thereto, on August 17, 1949, Irma Rivera filed a motion reciting alleged additional grounds in support of the motion. The petitioner now alleged that, subsequent to the filing of the original motion, Judge Gallardo has declared himself to be a personal enemy of Lic. L. Santiago Carmona, attorney for Irma Rivera. She describes in detail the action of Judge Gallardo in six cases in which Lic. Santiago Carmona represented one of the parties. According to her, these acts of Judge Gallardo demonstrate the prejudice of the latter against her attorney.

On September 28, 1949 Judge Umpierre entered an order denying the motion for disqualification. Judge Umpierre's order reads in part as follows: "Judge Fernando Gallardo was presented as the first witness and when he finished his testimony, Lic. Leopoldo Santiago Carmona announced that he waived his motions for disqualification and removal and he would settle this matter in another form. After he made this waiver, he took the witness chair and testified. After discussion of the motions was concluded he announced that he was interested in presenting the testimony of Hon. Willis Ramos, Hon. Pablo José Santiago Lavandero, the reporter of 'El Imparcial' for Bayamón and Mr. Ramón Díaz, Chief of Reporters of 'El Imparcial', the latter two with reference to an item published in that paper." The order of the lower court recites that counsel was given until 2 P. M. to present this testimony, but does not indicate whether it was actually presented.

In his order, Judge Umpierre discusses in detail the various actions of Judge Gallardo in a number of cases in which Lic. Santiago Carmona was counsel. He concludes that a showing that errors of fact or of law have been committed does not establish prejudice or partiality.

Judge Umpierre found that "differences of judgment" existed between Judge Gallardo and Lic. Pablo José Santiago Lavandero, son of Lic. Santiago Carmona. Nevertheless, according to Judge Umpierre, nothing adduced at the hearing demonstrated any prejudice on the part of Judge Gallardo against Lic. Santiago Carmona which disqualified him.

On September 28, 1949 Judge Gallardo entered an order modifying the order of Judge Ramos of February 21, 1949 in which the latter appointed Mrs. Santos guardian *ad litem* for the children. Instead, Judge Gallardo appointed Lic. José E. Bosch Roqué as such guardian *ad litem* because of the conflicting interests of Irma Rivera *vis-a-vis* her children and of the conflicting interests of Mrs. Santos and the children. On September 28, 1949 Judge Gallardo also entered a companion order eliminating Irma Rivera as a party in the judicial administration. However, this order recites that since she has a suit filed claiming that half the estate belonged to her and may become a creditor of the estate, "the court reserves her right to file in writing a petition of intervention in this proceeding and now announces that if she does this the court will permit her to intervene."

Accepting the suggestion of the lower court, Irma Rivera filed a motion of intervention, stating that once the intervention was complete, she waived her opposition in the record as to the appointment of Lic. Bosch as guardian *ad litem* for her children. The proposed complaint of intervention, among other things, alleged that Irma Rivera was entitled to half of the estate because of an agreement between her and the decedent to share the product of their joint efforts while living in concubinage in operating a restaurant and *cafetín*. See *Torres* v. *Roldán*, 67 P.R.R. 342.

On October 13, 1949 after notice and hearing, the lower court appointed Pablo Castillo permanent administrator and ordered Irma Rivera, who had been restored to possession of the properties under the order of February 28, 1949 of Judge Ramos, to render an accounting to the court as to the money

and properties of the estate.[2]  On October 14, 1949 the Marshal took possession of the properties allegedly belonging to the decedent and delivered them to Castillo.   On October 19, 1949 Irma Rivera filed a motion in which in effect she asks the lower court to restore her to possession of the properties on the ground, among others, that half of the property belongs to her.

On January 13, 1950 the district court entered an order granting the opposition of Mrs. Santos to the intervention of Irma Rivera and denying the latter permission to intervene. In support of its order, the district court cited *Díaz* v. *Frontera*, 65 P.R.R. 655.

■ We granted the petition of Irma Rivera for certiorari to review certain of the foregoing orders.   The first order to which she objects is the order of October 13, 1949 naming Castillo judicial administrator.   Her theory is that this should not have been done because the estate was already *in custodia legis* by virtue of the order of February 28, 1949 of Judge Ramos whereby he restored the property to Irma Rivera under a $6,000 bond pursuant to our mandate in the case reported in 69 P.R.R. 457.   But the action of Judge Ramos on its face was merely temporary to safeguard the property pending appointment of a permanent administrator. The lower court was therefore not only authorized but required under our decision in 69 P.R.R. 457 to enter its order of October 13, 1949 appointing a permanent administrator, after due notice and hearing.

■ Irma Rivera next complains of the order of January 13, 1950 denying her motion for intervention.   This is a proceeding under the Law of Special Legal Proceedings, §§

_____

[2] This action was apparently taken in response to the motion of Mrs. Santos, filed on March 3, 1949, praying that the order of February 28, 1949 divesting the original administrator of possession of the estate be set aside and asking that the lower court proceed according to law with the appointment of a judicial administrator.

534–597, Code of Civil Procedure, 1933 ed. Since it is not an "ordinary civil action", the Rules of Civil Procedure do not apply thereto. See Rule 81; *People* v. *Henneman*, 69 P.R.R. 927. Rule 24, governing intervention, therefore does not apply here. But § 72 of the Code of Civil Procedure does apply, in view of the silence of the Law of Special Legal Proceedings on the subject of intervention. See *Díaz* v. *Frontera, supra.* And, for present purposes, as we pointed out in the *Frontera* case, Rule 24 and § 72 are substantially similar.

■■ The lower court erred in denying the motion for intervention. The facts in the *Frontera* case, on which the lower court relied, were different. There the petitioners who attempted to intervene had no interest in the judicial administration as such. They merely hoped to obtain ultimately a personal judgment against the heirs in a pending suit in another court, and they wished the court to withhold from distribution to the heirs the amount they were claiming in the independent suit. Cf. *Heirs of De Jesús* v. *District Court,* 65 P.R.R. 1. But they stood neither to gain nor lose from any action taken in the judicial administration proceeding.

On the other hand, here Irma Rivera is profoundly interested in the judicial administration. She claims that one-half of the property in the hands of the administrator should not be there at all as it belonged to her rather than to the decedent. And the situation is made even more serious by the fact that part of her claim covers a *cafetín* and restaurant which were operated as going businesses by her and the decedent. She was entitled to immediate adjudication of such a claim within the judicial administration proceeding just as much as a widow of a decedent who claims that certain property was her private property rather than community property. In brief, Irma Rivera contends that as to half of the property there should be no judicial administration at all as property which belongs to her mistakenly found its way into the hand of the administrator. She is entitled to a hearing

on this issue in the judicial administration proceeding, as no administrator is entitled to administer property not belonging to the decedent.[3]

▇▇ The petitioner also complains of the orders appointing a guardian *ad litem.* But the order of February 21, 1949 of Judge Ramos recites that this action was taken with the consent of both parties. And in her petition for intervention Irma Rivera specifically alleges that she agrees to the appointment of Lic. Bosch as guardian *ad litem* for her children, once her motion for intervention is granted. As we have already held that she will be granted the right to intervene, we are of the view that she has consented to the appointment of Lic. Bosch as such guardian *ad litem.* In addition, her claim is clearly adverse to the interests of her children. The lower court under § 160 of the Civil Code was therefore required to appoint a guardian *ad litem* for the children. See *Estate of Alvarez v. Registrar of Property,* 16 P.R.R. 572; *Agostini* v. *Registrar,* 39 P.R.R. 522; *Rodríguez* v. *Martínez,* 68 P.R.R. 417.

▇ The last contention is that Judge Gallardo is disqualified and should not have acted in this case after the motion to disqualify him was filed. The difficulty with this argument is that there is nothing in the record before us on which we could base a ruling in favor of the petitioner. Her motion for disqualification contains serious allegations. But such allegations require proof. And the petitioner has not brought here any of the evidence which was before Judge Umpierre when he denied the motion. The fact that Judge Umpierre found that "differences of judgment" existed between Judge Gallardo and the son of counsel for petitioner is not in itself sufficient to require us to reverse the ruling of

---

[3] *Pérez et al.* v. *Alvarez,* 32 P.R.R. 146; *Cabanillas* v. *Torrents,* 32 P.R.R. 40; *Planellas* v. *Pastrana,* 63 P.R.R. 274; *Mercado* v. *Mercado,* 66 P.R.R. 36, 75–77, 92–97; *Mercado* v. *Mercado,* 66 P.R.R. 764; *Sabater* v. *Escudero,* 23 P.R.R. 794, 798; *Ex parte Vega,* 28 P.R.R. 361, 363–4. See *Rodríguez* v. *District Court,* 68 P.R.R. 904; 4 Moore's Federal Practice, 2nd ed., pp. 19, 31, 45, 55; Clark on Code Pleading, 2nd ed., pp. 420–26.

Judge Umpierre that Judge Gallardo was not disqualified to act in this case. We therefore cannot interfere with the action of Judge Umpierre in this respect.

■ No lawyer may arbitrarily decide he does not wish a certain judge to try a specific case. And the record here does not contain the slightest evidence that Judge Gallardo is prejudiced in this matter. On the other hand, the record shows that, however mistaken he may be, Lic. Santiago Carmona is in good faith convinced that he cannot obtain an impartial trial from Judge Gallardo because of the differences which Judge Umpierre found existed between Judge Gallardo and the son of Santiago Carmona. Under all the circumstances, we therefore suggest to Judge Gallardo that he make arrangements for another judge to try this case. By withdrawing from the case at this time, Judge Gallardo would be aiding in keeping the courts beyond the slightest suspicion of partiality. *In re González*, 65 P.R.R. 357, 379; *Insular Board of Elections* v. *District Court*, 63 P.R.R. 786.

Without attempting to assess the blame therefor, we think it appropriate to indicate that liquidation of this estate has been unnecessarily prolonged. The interests of all concerned have thereby been immeasurably damaged. The lower court should now proceed promptly to liquidate the estate.

The order of January 13, 1950 denying the motion of Irma Rivera for intervention will be set aside, and the case remanded for further proceedings not inconsistent with this opinion.